

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA ACORN FAIR HOUSING ORGANIZATION** | **CIVIL ACTION** |
| | **NO. 00-0019** |
| **VERSUS** | |
| | **SECTION "T" (4)** |
| **MARCEL J. JAFFE, et al.** | |

This cause came for hearing on a previous date upon the Motion of the Defendant, Marcel J. Jaffe, for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having heard the arguments of counsel, and having studied the legal memoranda and exhibits submitted by the parties, the record, and the applicable law, the Court is fully advised on the premises and ready to rule.

**ORDER AND REASONS**

**I. Background**

On August 1, 1999, an independent contractor hired by the Plaintiff, Louisiana ACORN Fair Housing Organization ("LAFHO"), for "testing" purposes responded to an advertisement in the New Orleans newspaper. The ad in The Times-Picayune was placed by the Defendant, Marcel Jaffe,

DATE OF ENTRY
SEP  8 2000



concerning an apartment located at 1230 St. Andrew Street which was for rent. The independent contractor, Jan Livingston, participated in what was later documented to be a *three-minute* telephone conversation. Said conversation apparently serves as the sole basis for this lawsuit.

Because the Court finds the conversation particularly relevant it provides the details of the phone call here:

| | |
|---|---|
| Landlord: | Hello? |
| Tester: | Hello. I'm calling about the ad that you had for an apartment in the Saturday paper. |
| Landlord: | Yes. |
| Tester: | Could you tell me if the apartment is still available? |
| Landlord: | Yes it is. |
| Tester: | Is a downstairs apartment or an upstairs . . . |
| Landlord: | No, it's an upstairs, uh, rear apartment. You see this building has 8 apartments . . . |
| Tester: | Oh, I see. |
| Landlord: | . . . and it's, uh, you'd have to go down the little alleyway about halfway and then go up the steps, and it's the one on the second floor to the rear. |
| Tester: | Okay, it doesn't give the address in the newspaper. |
| Landlord: | Its 1230 St. Andrew. |
| Tester: | 1230 St. Andrew. Okay. I'm trying to find an apartment for my client who is a deaf and blind male. |
| Landlord: | Oh my God, it would be hard to find one on the second floor then. |
| Tester: | Well, no, the second floor is no problem, but there would have to be some modifications required for him, for instance, he does have a companion animal, seeing-eye dog, which obviously is not a pet, he'd |

|            |                                                                                                                                                                                                                                                                                      |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | need a special doorbell and grab bars in the bathroom, different things. . . .                                                                                                                                                                                                        |
| Landlord:  | Yeah, I understand, but *I* couldn't go to all that trouble, really, uh, I don't think we could help him in this case. The place is upstairs and we have a ceramic tile bath and to put the bar and everything up there, it would really be too much. We're asking so little for the apartment to begin with . . . |
| Tester:    | I understand.                                                                                                                                                                                                                                                                         |
| Landlord:  | . . . you know.                                                                                                                                                                                                                                                                       |
| Tester:    | Okay.                                                                                                                                                                                                                                                                                 |
| Landlord:  | I'm sorry.                                                                                                                                                                                                                                                                            |
| Tester:    | I understand. Thank you.                                                                                                                                                                                                                                                              |
| Landlord:  | Alright.                                                                                                                                                                                                                                                                              |
| Tester:    | Bye bye.                                                                                                                                                                                                                                                                              |

(Defendant's Memorandum in Support of Motion for Summary Judgment, Exhibit "2") (emphasis added). The client of whom Livingston spoke was fictitious.

After completing said phone conversation, Livingston documented the call on a "Telephone Report Form" provided by the Plaintiff. In handwritten terms Livingston stated that "[t]he *lady* who owns the building sounded apprehensive immediately about having a deaf and blind male tenant. *She* was unwilling to consider modifications and was regretfully discouraging." (Defendant's Memorandum in Support of Motion for Summary Judgment, Exhibit "1") (emphasis added).

On January 4, 2000, the Plaintiff filed suit against Jaffe[1] claiming that he "has discriminated against housing applicants by refusing to show, or otherwise make available dwellings because of

---

[1] The Court notes that the tester spoke with a *woman*; Marcel Jaffe is a man. The other Defendant, Colony Insurance, was added to the above-captioned matter on April 7, 2000. Colony Insurance is the insurer of the property at issue in this litigation.

the disability of applicants." (Complaint, para. 7). The action is brought under the Federal Fair Housing Act, Title VIII of the Civil Rights Act, 42 U.S.C. § 3601, *et seq.*, and under the Louisiana Open Housing Act, LA. REV. STAT. § 51:2601, *et seq.* In its Complaint, LAFHO states that it

> sues in its own right for injuries sustained regarding its lawful activities related to ensuring nondiscriminatory housing practices in Louisiana, and for damages based on lost staff time, diversion of its resources, frustration of its mission to promote equal access to housing in Louisiana, and other costs it has expended in efforts thwarted by defendant.

(Complaint, para. 5).

Furthermore, LAFHO claims that "[a]s a direct and proximate result of defendant's conduct, plaintiff has suffered a loss of civil rights." (Complaint, para. 25). Finally, LAFHO prays "for an injunction against the defendant prohibiting violations of the Fair Housing Act;" "for an injunction against the defendant prohibiting violations of the Louisiana Open Housing Act;" "for compensatory damages for plaintiff's economic losses and loss of civil rights;" "for punitive damages for defendant's knowing and intentional violation which will continue unless a punitive damage award of sufficient magnitude is granted;" and "for attorneys' fees and all costs of suit, and for all other legal and equitable relief as the Court finds appropriate." (Complaint, p. 7).

## II. Defendant's Motion for Summary Judgment

On August 14, 2000, the Defendant filed the instant Motion for Summary Judgment. Jaffe claims that he is entitled to judgment as a matter of law because, according to his assertion, LAFHO lacks standing to bring this lawsuit. Jaffe claims that in order to prove an "injury in fact," LAFHO must demonstrate that the Defendant's actions impaired the organization's ability to facilitate open housing. Jaffe contends that LAFHO simply cannot meet this burden.

Citing a recent case decided by the United States Court of Appeals for the Seventh Circuit, the Plaintiff argues that it does, in fact, have standing to bring the instant lawsuit. LAFHO argues that "[a] tester who has been the object of a misrepresentation made unlawful by the Fair Housing Act has 'suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provision.'" (Plaintiff's Memorandum in Opposition of Motion for Summary Judgment, p. 5) (quoting Kyles v. J.K. Guardian Security Services, Inc., --- F.3d ---- , 2000 WL 892805, *6 (7th Cir. July 5, 2000)).

### III. Legal Analysis

A. *Law on Summary Judgment*

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Stults v. Conoco, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996) (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis supplied); Tubacex, Inc. v. M/V RISAN, 45 F.3d 951, 954 (5th Cir. 1995).

5

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B. *Law on Standing*

There are minimum requirements that an organization must establish to have constitutional standing:

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed in a favorable decision.

Louisiana ACORN Fair Housing v. LeBlanc, 211 F.3d 298, 304 (5th Cir. 2000) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotes, parentheses and citations omitted)).

> Under the Federal Fair Housing Act, the Supreme Court has held that an organization has suffered injury in fact if the defendant's actions impaired the organization's ability to provide counseling and referral services. The Court said, "[s]uch concrete and demonstrable injury to the organization's activities -- with the consequent drain on the organization's resources -- constitutes far more than simply a setback to the organization's abstract social interests."

Id. (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)).

The Fifth Circuit has described what types of organizational activities do not meet the Supreme Court's "injury in fact" requirement. "For example, '[t]he mere fact that an organization

6

redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.'" Id. (quoting Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees, 19 F.3d 241, 244 (5th Cir.1994)).

### C. *Fair Housing Laws*

With regard to discrimination in the sale or rental of housing, the Federal Fair Housing Act provides that the term "discrimination" includes, *inter alia*:

> a refusal to permit, *at the expense of the handicapped person*, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

42 U.S.C. § 3604(f)(3)(A) (emphasis added).

The Louisiana Open Housing Act contains a provision which mirrors the language quoted above. See LA. REV. STAT. § 51:2606(A)(6)(c)(*i*).

Under the Federal Fair Housing Act, an allegedly aggrieved person may bring a civil action in the appropriate United States district court or State court to obtain appropriate relief with respect to the discriminatory housing practice in question. See 42 U.S.C. § 3613(a)(1)(A). In such a civil action, "the court, in its discretion, may allow the prevailing *party* . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2) (emphasis added).

The Louisiana Open Housing Act also provides for the same recovery. "The court . . . may award to a prevailing plaintiff actual damages and punitive damages, together with court costs and reasonable attorney fees." LA. REV. STAT. § 51:2613(E). However, the court also "may grant as

7

relief, as it deems appropriate, court costs and reasonable attorney fees to a prevailing defendant, consistent with federal Civil Rights statutes." LA. REV. STAT. § 51:2613(I).

### D. *Application of Law to Case at Hand*

Consistent with the Fifth Circuit's holding in Louisiana ACORN Fair Housing v. LeBlanc, 211 F.3d 298 (5th Cir. 2000), this Court holds that LAFHO does not have standing to bring the claims pending against Jaffe. The Plaintiff has suffered no injury in fact. Furthermore, in the case at hand, the Plaintiff cannot prove that the Defendant's actions impaired LAFHO's ability to provide counseling and referral services.[2]

Furthermore, this Court finds it significant that the tester did not request to inspect or survey the Defendant's apartment before stating that "there would have to be some modifications required for" her fictitious client. At that point, the tester could not have know that any such modifications would be necessary. Nor did the tester tell the woman with whom she spoke (presumably the Defendant's wife or daughter) that the cost of any such "modifications" would be borne by the fictitious client.

In light of the fact that the sole basis for this litigation is the above-referenced *three-minute* telephone conversation which this Court equates to nothing more than a form of entrapment, an award of costs and a reasonable attorney fee is appropriate.

---

[2] At oral argument heard on August 30, 2000, when questioned by the Court counsel for the Plaintiff indicated that the resources LAFHO has expended in this matter have taken away from its normal activities. Those activities include being able to conduct "outreach and education, research and monitoring, and intake and investigation of complaints." These were the exact activities discussed in Louisiana ACORN Fair Housing v. LeBlanc, *supra*. Counsel responded with the unsupported assertion: "[t]here is that as well as the referrals that the organization does, [and] investigations into other areas of discrimination in housing . . . in the community."

8

Accordingly,

**IT IS ORDERED** that Motion for Summary Judgment (Doc. 14) be, and the same hereby is **GRANTED** pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that each of LAFHO's claims be, and the same hereby are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all costs of this litigation are to be borne by the Plaintiff, and that the Plaintiff must reimburse the Defendant's attorney fees *up to* an amount of *one thousand ($1,000) dollars*.

New Orleans, Louisiana, this _____ day of September, 2000.

G. Thomas Porteous, Jr.
United States District Judge